FILED

2010 Oct-13  AM 11:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| PAMELA R. BUFF, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:09-cv-00612-LSC |
| | ] | |
| JACK'S FAMILY RESTAURANTS, INC., | ] | |
| | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Before this Court is a motion for partial summary judgment filed by Pamela Buff ("Buff" or "Plaintiff") on May 28, 2010.  (Doc. 24.)  Also pending is Buff's motion to strike.  (Doc. 29.)

Jack's Family Restaurants Inc. ("Jack's" or "Defendant") employed Buff in various positions until 2008.  Buff's employment ended concurrently with the leave she took under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq*.  She claims Jack's interfered with her FMLA rights and ended  her employment in retaliation for exercising those rights.   On

the present motion, Buff contends that the findings made by the Alabama Department of Industrial Relations ("DIR") during her successful unemployment compensation hearing preclude Jack's from litigating "the reasons for [her] discharge." (Doc. 25, at 2.)  The issues raised in Plaintiff's motion for summary judgment have been briefed by both parties and are now ripe for decision.  After considering the legal arguments and evidence presented, this Court denies both Plaintiff's motion to strike and her motion for summary judgment.

II.    Facts.[1]

Buff worked at Jack's from 2001 until 2008.  During this period, Buff worked in various positions at several Jack's locations.  Her final position was as an assistant manager at the Jack's in Dora, Alabama, ("Dora restaurant").  In early 2008, Vicki Frederick was the area supervisor, and Stephanie

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Comeens was the general manager of the Dora restaurant, Buff's immediate supervisor.

Jack's promulgates policies addressing FMLA leave. The policies, in part state that "[e]mployees returning from a medical leave are required to provide certification from a health care provider indicating that the employee is able to resume work with no limitations." (Doc. 21, at 3.)  Yet when Jack's approved Buff's FMLA leave from March 13, 2008, until June 5, 2008, it did not require Buff "to present a fitness-for-duty certificate prior to being restored to employment." (Doc. 23-2 at 6.)

During the leave, Buff supplied several doctors' excuses to Jack's. Jack's retained copies of three.  On June 3, 2008, Buff had an appointment with Dr. Terry Short.  Dr. Short's office note provides

> Blood pressure readings are not much better. . . . She doesn't feel that she had returned [sic] to her 10 hours a day and physically demanding work.  She's not sure what she is going to do but she can begin to look for something which were [sic] hours and less physically demanding.

(Doc. 26-6, at  13.)

The parties dispute the events of June 3, 2008.  Buff maintains that she obtained a return-to-work slip from Dr. Short's office and went to Jack's where she gave the slip to Comeens, her supervisor.  Jack's points out that its electronic records system reveals that Comeens did not work that day.  The parties do not dispute that Buff never worked for Jack's after going on FMLA leave and eventually sought unemployment compensation.

Initially denied unemployment compensation, Buff appealed.  She submitted to the DIR an October 2008 doctor's note stating that she became able to perform general managerial duties effective June 3, 2008.  (Doc. 26-12, at 19.)  The DIR held a phone conference on December 29,2008, in which the hearing officer stated that the issue on appeal was whether Buff voluntarily left Jack's without good cause.  Frederick represented Jack's at the hearing.   During the approximately half-hour phone conference, Frederick testified under oath to knowing that Buff "gave her doctor statement to [Comeens]" and that Comeens promised to contact Buff about returning to work. (Doc. 26-12, at 14.) Frederick then testified that her own attempts to contact Buff about returning to work failed because Buff was unreachable.

The hearing officer granted Buff's appeal, finding the following:

> [Buff] was released by the doctor to return to full duty on June
> 3, 2008.  She gave the doctor's release to the general manager.
> The general manager did not put the claimant on the schedule as
> the schedule was already made.  The general manager informed
> the claimant that she would be in touch.  The claimant has not
> been contacted for work.  (Doc. 23-3, at 1.)

The hearing officer then concluded the following:

> [T]he preponderance of evidence does not show the claimant
> voluntarily quit her work.  The evidence shows she was on a
> leave of absence.  The evidence also shows that when she was
> released to return to full duty there was no work available.
> (Doc. 23-3, at 1.)

The hearing officer charged Jack's experience rating account for Buff's employment, which increases the amount Jack's contributes to unemployment; Jack's did not appeal the decision.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

A.    Evidentiary Motion.

As a preliminary matter, the Court will address Buff's motion to strike "various evidentiary submissions." (Doc. 29, at 1.)  In particular, Buff contends that the declaration and deposition testimony of Vicki Frederick constitute "sham evidence" and that collateral estoppel precludes Jack's from submitting a declaration or deposition from anyone except Buff, even though Buff submitted excerpts from the depositions she now seeks to strike. (Doc. 29, at 4-5; Doc. 23-2, at 1.)

Buff cites to *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, in support of her argument. 736 F.2d 656 (11th Cir. 1984). *Van T. Junkins* holds that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 657.

Buff argues that Frederick's Declaration and Deposition contradict the earlier testimony at the hearing.   But the deposition and declaration fail to meet the *Van T. Junkins* requirement for sham evidence.   Frederick did not give clear answers to unambiguous questions: her testimony conflicted at times.   And she later explained her confusing testimony.

At the hearing, Frederick said "I never seen a doctor's excuse saying that . . . . [Someone on behalf of Buff] called me and told me that he had a doctor's excuse releasing [Buff] and at that point I tried to get in contact with her to come back to work."  (Doc. 26-12, at 12-13.)  Yet when the hearing officer asked if Frederick knew that "Buff gave her doctor statement to a Stephanie and was told that the schedule was already made," she answered, "[y]es, I did and that's when I tried to call [Buff]."  (Doc. 26-12,

at 14.).  Her declaration may explain this confusing testimony, as she was "not able to hear a substantive portion of Ms. Buff's testimony or the hearing officer's questions in the telephone unemployment hearing," due to poor cellphone call quality.  (Doc. 26-3, at 3.)  Indeed, the hearing transcript reveals that "network difficulties" caused the first attempt to dial Frederick to result in a dropped call and that dozens of examples exist where testimony was "unintelligible."  (Doc. 26-12, at 3, 12-14.)  Frederick's deposition and declaration testimony thus fail to constitute sham evidence.

Buff offers collateral estoppel as the basis to strike other evidence.  As this Court address below, collateral estoppel does not apply.  Because Buff offers no other reasons to strike this evidence, this Court denies her motion to strike the depositions of Stephanie Comeens, Guy Kirk, Vicki Payne, and Vicki Frederick as well as the declarations of Comeens, Kirk, Payne, Frederick, and Donna Wilkinson.

B.    Motion for Summary Judgment

Relying on DIR hearing's findings, Buff seeks to collaterally estop Jack's from contesting (1) the reasons for Buff's discharge and (2) that Buff returned to work and provided a doctor's return to work slip.  (Doc. 25, at

12.)  Jack's argues that Buff cannot establish the elements of collateral estoppel.  (Doc. 27, at 11.)

Federal law requires federal courts to give "preclusive effect to the fact-finding of state administrative tribunals." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986).  When a state agency (1) acts in a judicial capacity, (2) resolves disputed issues of fact, and (3) allows parties an adequate opportunity to litigate those issues, a federal court "must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Id.*

Alabama law requires the following elements in order to apply collateral estoppel to an issue raised in an administrative proceeding:

1. Identity of the parties;

2. Identity of the issues;

3. Adequate opportunity to litigate the issues in the administrative proceeding;

4. Actual litigation and determination of the issues; and

5. Findings necessary to the issue sought to be estopped.

*Wal-Mart Stores, Inc. v. Smitherman*, 743 So.2d 442, 445 (Ala. 1999).

Jack's argues the absence of elements (2) and (3): the DIR hearing addressed issues dissimilar to the issues before this court and Jack's did not have an adequate opportunity to litigate.

I.     Identity of Issues.

Buff brings two FMLA claims, a retaliation claim and an interference claim.  The claims involve different issues.  Bringing a retaliation claim requires Buff to show that Jack's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (quoting *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999).  This showing requires a causal connection between the FMLA leave and the adverse employment decision.  *Strickland*, 239 F.3d at 1207.  The circumstances of Buff's leaving Jack's did not concern the DIR.  The DIR found that Jack's did not schedule Buff to work after Buff reported to work; the DIR did not address Jack's reason for not scheduling Buff.  The DIR proceeding determined that Buff showed up to work and that Jack's did not

schedule her.  In contrast, a retaliation claim involves a different issue: the motive behind not scheduling Buff.

In contrast, the interference claim involves the same issue that the DIR hearing addressed.   The FMLA requires employers to restore employees to their previous or equivalent positions after their FMLA leave expires.   29 U.S.C. § 2614(a)(1).  If employees fail to return from leave under the act, the employer has no obligation to restore them.  *See* 29 U.S.C. § 2614(a)(1). Buff argues that she returned to work; Jack's argued that she did not.  The DIR found that Buff returned to work after FMLA leave and thus, remained eligible for unemployment.  (Doc. 23-3.)  The issue is the same: whether Buff returned to work.   But Buff must also establish that Jack's had an opportunity to litigate her interference claim adequately.

II.    Opportunity to Litigate.

If a party does not have a full and fair opportunity to argue its version of the facts at the administrative level, the district court will allow it to make that argument, no preclusion.  *See United States v. Utah Const. & Min. Co.*, 384 U.S. 394,  422 (1966); *Bryant v. Jones*, 575 F.3d 1281, 1302 (11th Cir. 2009).

Buff attempts to substitute a thirty-seven minute conference call for litigation in federal court.  Jack's had, at most, about two months to prepare for the hearing, because Buff filed notice of her intent to appeal two month before the DIR hearing.  Vicki Frederick, Jack's supervisor for the area comprising the Dora restaurant, represented Jack's.  Neither Jack's nor Frederick had an opportunity to review documents that Buff provided the DIR.  (Doc. 27, at 7.) These documents included the October 2008 doctor's note from Dr. Short stating that he had released Buff to perform the duties of her usual occupation on June 3, 2008.  (Doc. 26-12, at 19.) Jack's argues that if it had known about the October 2008 release, it would have obtained Buff's earlier medical records indicating that Dr. Short released her to work but not to her previous job, an argument Jack's makes now.

At the hearing, Buff testified that on June 3, 2008, she went to Dr. Short, procured a return-to-full duty doctor's release, drove to the Dora restaurant, and provided the release to the manager, Comeens.  Jack's contends knowing Buff's position then would have led it to confirm, rather wait until the current litigation, Comeens's absence from restaurant on June

3, along with the absence of the June 3 release from Jack's files, which held three other doctor's notes pertaining to Buff.

Jack's had no chance to investigate or develop its own version of the facts.  The DIR hearing does not replicate the current litigation.  DIR hearings provide procedural rules that allow for sworn testimony, cross-examination, documentary evidence, subpoena requests for documents or no more than four witnesses, and in a telephonic hearing, copies of any submitted documents provided to the adverse party before the hearing.  Ala. Admin. Code §§ 480-1-40.04, 480-1-40.06(1); 480-1-40.13.  But the DIR hearings do not provide for any affirmative written discovery, no interrogatories or requests for production or admission.   And in this case, the word "unintelligible" riddles the transcript of the tape recorded hearing. (Doc. 26-12, at 3, 12-14.)  Moreover, Jack's was evidently not provided with the documents that Buff submitted, which would contravene  Ala. Admin. Code § 480-1-40.13.    That section provides the sole way for Jack's to find out about Buff's claims prior to the DIR hearing.  Even had Jack's obtained copies of Buff's October 2008 doctor's release before the hearing, its ability to request subpoenas may not have garnered the medical documentation

that it relies on now because Buff did not have to provide the DIR with any documents until five days before the hearing.

Buff nonetheless argues that Jack's had a full and fair opportunity to litigate the issues because Jack's could have appealed the decision and cites *Wal-Mart Stores, Inc. v. Smitherman* for the proposition.  (Doc.28, at 6); 743 So.2d 442, 445 (Ala. 1999).  Buff also points to three federal cases applying collateral estoppel to DIR findings.  *See Land v. Glover*, 404 F. Supp. 2d 1335 (M.D. Ala. 2005); *Hall v. Wal-Mart Associates, Inc.*, 373 F. Supp. 2d 1267 (M.D. Ala. 2005); *Rigby v. D.T. Marshall*, 134 F. Supp. 2d 1259 (M.D. Ala. 2000).

These cases are distinguishable.  First, none applied collateral estoppel to FMLA claims.  Second, all dealt with a plaintiff attempting a mulligan: losing at the DIR level and then suing same party on the same issues in federal court.  Each court stressed the importance of the plaintiffs' full factual knowledge at the time of the DIR hearing.  For example, in *Smitherman* "[a]t the time of the hearing,[the plaintiff] knew [the defendant's] stated reason for terminating her employment. 743 So. 2d at 447.  In *Land*, "the facts were known and could have been brought to the

hearing officer's attention, and are not new facts."  404 F. Supp. 2d at 1339

n. 1.  In *Hall*, the plaintiff argued the same underlying facts at the trial court

level that he did "[t]hroughout the state process."  373 F. Supp. 2d at 1273.

And in *Rigby*, [a]ll this was known to [plaintiff] before his administrative

hearing . . . ." 134 F.Supp.2d at 1263.

Conversely, in this case, Jack's did not know that their records would

show that Comeens's absence from work the day that Buff allegedly gave Dr.

Short's June 3, 2008 release to her, did not know that  Dr. Short's office

note from the same day indicated he released Buff to work less stressful than

her job, and did not know that neither Dr. Short's office nor its own files

would contain the June 3, 2008 release.  Without knowing these facts, Jack's

could not be expected to then appeal an adverse decision, especially a

decision of marginal  monetary concern.

In sum, Jack's did not have adequate opportunity to litigate the issues.

It was not aware of many important facts at the hearing.  Because it did not

have knowledge, Jack's did not have a "full and fair opportunity to argue

[its] version of the facts." *Utah Const. & Min. Co.*, 384 U.S. at 422.  Without

adequate opportunity to litigate the issues at the DIR hearing, Jack's is not

collaterally estopped from contesting whether Buff terminated her employment voluntarily.

## VI.    Conclusion.

For the reasons set forth above, Plaintiff's motion for partial summary judgment will be denied.  A separate order will be entered.

Done this <u>13th</u> day of October 2010.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE